**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ENTERPRISE BANK AND TRUST        ) | |
|        ) | |
| Plaintiff,        ) | |
|        ) | |
| v.        ) | Case No. _____ |
|        ) | |
| JOHN C. BOVAY, TRUSTEE OF THE        ) | |
| CONFEDERATE TRUST DATED        ) | |
| MARCH 19, 2008, and JACKSON C.        ) | |
| MAY,        ) | |
| Defendants.        ) | |

## COMPLAINT

Plaintiff Enterprise Bank and Trust ("Enterprise"), for its Complaint against defendants John C. Bovay, Trustee of the Confederate Trust Dated March 19, 2008 (the "Borrower") and Jackson C. May ("May" and together with Borrower, the "Defendants"), states as follows:

## PARTIES

1. Enterprise is a Missouri chartered trust company headquartered in Clayton, Missouri.

2. Bovay is the trustee of the Confederate Trust Dated March 19, 2008 (the "Trust"), which May formed as settlor.  Mr. Bovay is a natural person residing in Alachua County, Florida. Mr. Bovay, as trustee of the Trust, is the Borrower under the Loan (as described herein).

3. May is the settlor of the Trust.  May is a natural person residing in Alachua County, Florida.  May is the guarantor of the Loan (as described herein).

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000.00, exclusive of interest and costs,

and there is complete diversity of citizenship between Enterprise and Defendants.  Enterprise is a citizen of Missouri.  Defendants are citizens of Florida.

5.     The Court has personal jurisdiction over Defendants because this action arose from and is connected with Defendants' activities in Missouri and in this District.  Defendants directly and intentionally transacted business with Enterprise in this District with respect to the matters at issue in this lawsuit and a substantial part of the events giving rise to and at issue in this lawsuit occurred in this district.  Further, Defendants consented to the jurisdiction of this Court pursuant to the Loan Documents (as defined hereafter).

6.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Enterprise's claims occurred in this District and Defendants consented to venue in this District pursuant to the Loan Documents (as defined hereafter).

## GENERAL ALLEGATIONS

### A.  The Loan

7.     Beginning on June 6, 2008, Enterprise and Borrower agreed on the terms of a loan transaction (the "Loan") to finance premiums on certain life insurance contracts issued by Northwestern Mutual Life Insurance Company (hereafter "Northwestern") that insured the life of May.

8.     Enterprise initially funded the Loan pursuant to a Promissory Note dated June 6, 2008 in the original principal amount of $2,620,000, executed by Borrower (the "6/6/08 Note").[1] See 6/6/08 Note, attached hereto as **Exhibit 1**.  The 6/6/08 Note contained a maturity date of June 6, 2013.  See Ex. 1 at 1.

---

[1] Mr. James D. Salter and Mr. Arch W. Roberts were the trustees of the Trust at the inception of the Loan and signed the 6/6/08 Note.

2

9.     To secure repayment of the Loan, Mr. Salter and Mr. Roberts, as co-trustees of the Trust, executed an Assignment of Life Insurance Policy as Collateral, pursuant to which Borrower assigned to Enterprise two life insurance policies held at Northwestern insuring the life of the May (policy numbers XXXX4363 and XXXX9570, hereafter the "Policies").  See Assignment of Life Insurance Policy as Collateral, attached hereto as **Exhibit 2**; Northwestern Mutual Policy No. XXXX4363, attached hereto as **Exhibit 3**; Northwestern Mutual Policy No. XXXX9570, attached hereto as **Exhibit 4**.

10.     On June 25, 2013, the maturity date of the 6/6/08 Note was extended to August 5, 2013 pursuant to the First Modification Agreement, executed by Enterprise and Borrower.[2]  See First Modification Agreement, attached hereto as **Exhibit 5**.

11.     On August 5, 2013, Enterprise and Borrower, executed the Amended and Restated Promissory Note, which among other things, increased the principal amount of the Loan from $2,620,000 to $5,365,000 (the "8/5/13 Note").  See 8/5/13 Note, attached hereto as **Exhibit 6**.  The 8/5/13 Note contained a maturity date of August 5, 2018.  Ex. 6 at 1.

12.     In conjunction with the execution of the 8/5/13 Note, May executed a Continuing Limited Guaranty Agreement dated 8/5/13 (the "8/5/13 Guaranty"), pursuant to which May guaranteed repayment of all indebtedness owing from Borrower to Enterprise, subject to a liability cap that states, in relevant part: "the liability of Guarantor to Bank hereunder shall not exceed the value of the certificate of deposit #XXXXXX7517 with Bank pledged by Guarantor to Bank, and any replacements thereto, plus the cost of enforcement of this Guaranty, including court costs and attorneys' fees."  See 8/5/13 Guaranty at 1, attached hereto as **Exhibit 7**.

---

[2] Mr. Bovay was the trustee of the Trust as of the date of the execution of the First Modification Agreement.

3

13.     Also on August 5, 2013, May executed an Assignment of Certificate of Deposit, whereby May assigned his interest in a certain certificate of deposit held at Enterprise (No. XXXXXX7517, hereafter the "Certificate of Deposit"). <u>See</u> Assignment of Certificate of Deposit, attached hereto as **Exhibit 8**.

14.     Enterprise and Borrower also executed a Second Modification Agreement effective as of August 5, 2013, whereby the parties acknowledged the increase in principal indebtedness incurred by Borrower with the execution of the 8/5/13 Note and May's pledging of the certificate of deposit. <u>See</u> Second Modification Agreement, attached hereto as **Exhibit 9**.

15.     In total, during the duration of the Loan, Enterprise advanced the sum of approximately $4,600,000.

**B.  Collateral Shortfall, Further Guaranty of Repayment, and Liquidation of Collateral**

16.     From the outset of the Loan and continuing into 2016, Enterprise was provided statements from a representative of Northwestern indicating that the cash surrender value of the Policies fully secured the Loan.

17.     In late December 2016, Enterprise learned that the actual surrender value of the Policies fell below the amount owed by Borrower under the Loan by approximately $1,172,418. This collateral shortfall constituted a default under the 6/6/08 Note and the 8/5/13 Note.

18.     In an attempt to reach a resolution on the default caused by the collateral shortfall, Enterprise requested an increase in the amount of May's guaranty as additional security to Enterprise, while May worked to obtain a letter of credit to pledge to bank to cure the shortfall. May's efforts to obtain a letter of credit continued until at least July of 2017.

19.     On March 2, 2017, May entered into an Amended and Restated Continuing Limited Guaranty Agreement, pursuant to which he agreed, among other things, to guarantee repayment of

4

all indebtedness owing to Enterprise by Borrower, subject to a liability cap that states, in relevant part: "the liability of Guarantor to Bank hereunder shall not exceed $1,500,000, plus the cost of enforcement of this Guaranty, including court costs and attorneys' fees."  See Amended and Restated Continuing Limited Guaranty Agreement at 1, attached hereto as **Exhibit 10**.

20.    In August 2017, May expressed his intention to Enterprise to liquidate certain real estate holdings and, with at least a portion of the proceeds, to increase the funding of the Certificate of Deposit to cure the collateral shortfall.

21.    On May 2, 2018, Enterprise provided Defendants formal notice of default under the 8/5/13 Note due to the collateral shortfall.  See Notice of Default dated May 2, 2018, attached hereto as **Exhibit 11**.

22.    In July of 2018, with the collateral shortfall remaining, Enterprise requested, and May provided, an interest payment in the amount of $55,000 to keep the collateral shortfall under the amount of the Guaranty.

23.    Continuing through July of 2018, May regularly updated Enterprise about his attempts to liquidate certain real estate holdings in order to cure the collateral deficiency, including by corresponding with Enterprise about specific transactions that were anticipated to close and provide funds to May.

24.    The 8/5/13 Note matured by its terms on August 5, 2018.

25.    In late September 2018, with Defendants having still been unable to resolve the collateral shortfall, Enterprise decided to liquidate the majority of its collateral.  Accordingly, on September 24, 2018, Enterprise called for the surrender of policy number XXXX9570 and applied the $3,002,798.85 proceeds thereof against the balance of the Loan.  See Letter dated September

24, 2018, attached hereto as **Exhibit 12**.  Enterprise also liquidated the substantial majority of the Certificate of Deposit and applied the $24,500 proceeds against the balance of the Loan.

26.     Together, the 6/6/08 Note, Assignment of Life Insurance Policy as Collateral, 8/5/13 Note, 8/5/13 Guaranty, Assignment of Certificate of Deposit, Second Modification Agreement, and the Amended and Restated Continuing Limited Guaranty Agreement and any and all other documents executed and delivered and/or related in any manner to the Loan are collectively referred to herein as the "Loan Documents".

**C.  Defaults**

27.     As noted above, in late December of 2016, the amount owed by Borrower under the Loan exceeded the value of the Policies plus the Certificate of Deposit by approximately $1,172,418.  This collateral shortfall constituted a default under the Loan Documents.

28.     In addition, Borrower has defaulted on the Loan Documents by failing to pay the balance due on the 8/5/13 Note upon its maturity date of August 5, 2018.

29.     For these reasons, among others, Enterprise believes the prospect of payment or performance of the Loan is impaired and has deemed itself insecure, which constitutes an additional default under the Loan Documents.

30.     Enterprise has reasonably incurred, and is continuing to incur, expenses for legal services to protect its interests relating to the Loan.  Additionally, interest shall continue to accrue on the unpaid principal balance of the Loan under the terms of the Loan Documents until the unpaid principal balance is fully repaid.  In addition to accrued interest, Borrower is liable for all other obligations under the Loan Documents including, without limitation, any amounts that are due or may become due and owing under the Loan Documents, late fees, legal fees, expenses, and court costs.

WA 14109628.3

31.     After application of the proceeds of policy number XXXX9570 and the proceeds of the substantial majority of the Certificate of Deposit, the remaining unpaid balance due and owing under the Loan as of February 19, 2020 is $1,642,006.94, which consists of $1,483,458.24 in unpaid principal, $158,498.70 in accrued and unpaid interest, and $50.00 in release fees, plus interest from and after February 19, 2020, and accrued and accruing attorneys' fees and costs associated with the enforcement of Enterprise's rights under the Loan Documents (the "Indebtedness").  Interest accrues on the Indebtedness from and after February 19, 2020 at the per diem rate of $195.53.

32.     Enterprise incorporates by reference the contents of each exhibit to this petition as though those exhibits were set forth fully in this petition.

### COUNT ONE: BREACH OF 8/5/13 NOTE
### (Defendant John C. Bovay, Trustee of the Confederate Trust Dated March 19, 2008)

33.     Enterprise incorporates by reference the preceding paragraphs of this petition.

34.     The 8/5/13 Note is a valid, enforceable contract.

35.     Enterprise performed or tendered its performance of its obligations under the 8/5/13 Note, including by making the Loan to Borrower.

36.     The 8/5/13 Note matured by its terms on August 5, 2018.

37.     Borrower has failed to pay the 8/5/13 Note upon its maturity, which constitutes a breach of the 8/5/13 Note.

38.     In addition, Borrower has breached the 8/5/13 Note due to the collateral shortfall that occurred in late December of 2016, whereby the amount owed by Borrower under the Loan exceeded the value of the Policies by approximately $1,172,418.

39.     For these reasons, among others, Enterprise believes the prospect of payment or performance of the Loan is impaired and has deemed itself insecure, which constitutes an additional default under the 8/5/13 Note.

40.     As of February 19, 2020, Borrower is indebted to Enterprise under the 8/5/13 Note for the Indebtedness as follows: $1,642,006.94, which consists of $1,483,458.24 in unpaid principal, $158,498.70 in accrued and unpaid interest, and $50.00 in release fees, plus interest from and after February 19, 2020, and accrued and accruing attorneys' fees and costs associated with the enforcement of Enterprise's rights under the Loan Documents.  Interest accrues on the Indebtedness from and after February 19, 2020 at the per diem rate of $195.53.

41.     As a result of Borrower's material breaches of the 8/5/13 Note, Enterprise suffered damages, including the loss of the principal that it lent in exchange for that agreement, interest on that money, and expenses that Enterprise has incurred to recover those amounts.

42.     Enterprise has met all conditions precedent under the 8/5/13 Note.

WHEREFORE, Enterprise asks the Court to enter judgment in its favor against Borrower for (a) $1,642,006.94; (b) interest that accrues on the principal balance of the 8/5/13 Note after February 19, 2020; (c) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the Loan that Enterprise has incurred and will incur to protect or enforce its rights relating to the Loan; and (d) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

## COUNT TWO: BREACH OF GUARANTY
### (Defendant May)

43.     Enterprise incorporates by reference the preceding paragraphs of this petition.

44.     May gave the 8/5/13 Guaranty and the Amended and Restated Continuing Limited Guaranty Agreement to induce Enterprise to extend credit to Borrower and in exchange for the

extension of credit by Enterprise to Borrower.  May also specifically gave the Amended and Restated Continuing Limited Guaranty Agreement in order to induce Enterprise to continue to extend credit during the period of time, beginning in late December 2016, when the amount of the Loan exceeded the value of the Policies plus the Certificate of Deposit by approximately $1,172,418.

45.    In the 8/5/13 Guaranty, May absolutely and unconditionally guaranteed the payment and performance of Borrower's obligations to Enterprise, subject to a liability cap that states, in relevant part: "the liability of Guarantor to Bank hereunder shall not exceed the value of the certificate of deposit #XXXXXX7517 with Bank pledged by Guarantor to Bank, and any replacements thereto, plus the cost of enforcement of this Guaranty, including court costs and attorneys' fees."

46.    In the Amended and Restated Continuing Limited Guaranty Agreement, May absolutely and unconditionally guaranteed the payment and performance of Borrower's obligations to Enterprise, subject to a liability cap that states, in relevant part: "the liability of Guarantor to Bank hereunder shall not exceed $1,500,000, plus the cost of enforcement of this Guaranty, including court costs and attorneys' fees."

47.    May delivered the 8/5/13 Guaranty and the Amended and Restated Continuing Limited Guaranty Agreement to Enterprise.

48.    Relying on the 8/5/13 Guaranty and the Amended and Restated Continuing Limited Guaranty Agreement, Enterprise extended credit to Borrower, including making and/or extending the Loan.

49.    May has failed to pay the unpaid amounts due and owing by Borrower on the Loan.

WA 14109628.3

50.     By failing to pay the Loan after Borrower also failed to pay the Loan, May materially breached the 8/5/13 Guaranty and the Amended and Restated Continuing Limited Guaranty Agreement.

51.     As a result of those material breaches of the 8/5/13 Guaranty and the Amended and Restated Continuing Limited Guaranty Agreement, Enterprise suffered damages, including the loss of the principal that it lent, interest on that money, and expenses that Enterprise incurred to recover those amounts.

52.     Enterprise has met all conditions precedent under the 8/5/13 Guaranty and the Amended and Restated Continuing Limited Guaranty Agreement.

WHEREFORE, Enterprise asks the Court to enter judgment in its favor against May, for (a) $1,500,000; (b) expenses including, without limitation, reasonable attorneys' fees and expenses, relating to the enforcement of the 8/5/13 Guaranty and the Amended and Restated Continuing Limited Guaranty Agreement that Enterprise has incurred and will incur to protect or enforce its rights relating to the 8/5/13 Guaranty and the Amended and Restated Continuing Limited Guaranty Agreement; and (c) pre-judgment interest and post-judgment interest as permitted by law, as well as any other relief that the Court deems just.

Respectfully submitted this 19th day of February, 2020.

**SPENCER FANE LLP**

By:/s/      Peter L. Riggs
Nathan A. Orr
Missouri Bar # 49836
Peter L. Riggs
Missouri Bar #57268
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
Telephone:  816-474-8100
Facsimile:  816-474-3216
norr@spencerfane.com

10

WA 14109628.3

priggs@spencerfane.com

*Attorneys for Defendant Enterprise Bank & Trust*

11

WA 14109628.3